IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY LOUISE BROOKS,

        Plaintiff,

v.                                                             Case No. 2:16-cv-02670-JTM

NANCY A. BERRYHILL,[1] *Acting Commissioner of Social Security*,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Mary Louise Brooks filed an application for Title II disability insurance benefits and an application for Tile XVI supplemental security income, claiming a disability beginning August 16, 2011. The Social Security Administration denied the claims initially and upon reconsideration. Plaintiff then requested and received an evidentiary hearing before an Administrative Law Judge (ALJ). Plaintiff, represented by an attorney, appeared for the hearing in Kansas City, Missouri, on April 30, 2015. ALJ Robert J. Burbank conducted the hearing by video from Topeka, Kansas, and issued a written opinion on June 12, 2015, denying plaintiff's claims. Plaintiff appeals, arguing the ALJ committed several errors in analyzing her claim.

**I. Legal standard.**

Under the Social Security Act, the court must accept the factual findings of the Commissioner if they are supported by substantial evidence. 42 U.S.C. § 405(g). The

---

[1] Nancy A. Berryhill is substituted as Acting Commission in place of Carolyn W. Colvin pursuant to Fed.R.Civ.P. 25(d).

court accordingly looks to whether the factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if she suffers from a physical or mental impairment which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined at any step that the

claimant is or is not disabled, further evaluation is unnecessary. *Barkley*, 2010 WL 3001753, at *2. The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal a designated impairment, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. Upon determining the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require a determination of whether the claimant can either perform her past relevant work or can perform other work that exists in the national economy. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751).

The claimant bears the burden at steps one through four to prove a disability that prevents performance of her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite the impairments, the claimant can perform other work in the national economy. *Id. See Weir v. Colvin*, No. 15-1300-JTM, 2016 WL 6164313, at *1–2 (D. Kan. Oct. 24, 2016).

**II. Discussion.**

3

Plaintiff was 51 years old at the time of the hearing. Her work history included one year as an order-filler in a pharmaceutical facility. After that, she spent two years as an office manager at an apartment complex. Beginning in 2007, plaintiff worked at a school as a paraeducator. After the alleged disability onset date of August 16, 2011, plaintiff continued to work as a paraeducator for thirty-five hours a week, until August of 2013.

The ALJ found that plaintiff had not engaged in substantial gainful employment since the alleged onset date of August 16, 2011.[2] He next determined that plaintiff suffered from the following severe impairments: fibromyalgia syndrome, obesity, degenerative disc disease, status post bilateral shoulder surgery, and plantar fasciitis. The ALJ found that none of the impairments, alone or in combination, met or medically equaled the severity of any impairment listed in the regulations. Next, the ALJ determined plaintiff's RFC, finding plaintiff could perform sedentary work as defined in C.F.R. 404.1567(a), except she could climb ramps and stairs frequently; she cannot climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to extreme cold and heat, vibration, and hazardous conditions. She is also limited to frequent overhead reaching bilaterally, and frequent handling and fingering with the right hand. At step four of the sequential process, the ALJ concluded that plaintiff could perform her past work as an office manager as that job is typically performed in the national economy. The ALJ relied on

---

[2] Plaintiff's continued work as a paraeducator until 2013 did not rise to the level of substantial gainful employment.

the testimony of a vocational expert in reaching that conclusion. The ALJ thus concluded that plaintiff was not disabled within the meaning of the Act.

1. *Whether the RFC is unsupported by substantial evidence with respect to plaintiff's mental impairment*. Plaintiff argues the ALJ erred in assessing the extent of her mental impairment by failing to apply the technique required by 20 CFR § 404.1520a. Dkt. 10 at 15. Additionally, she argues the ALJ was required to include any limitation from the impairment in the RFC, even if the impairment was non-severe. *Id*. Finally, plaintiff contends the ALJ failed to offer good reasons supported by substantial evidence for finding her mental impairment to be non-severe. *Id*. at 16-17.

In response, the Commissioner contends the ALJ's determination that plaintiff's mental impairment was non-severe was supported by substantial evidence. But the Commissioner does not address the argument that the ALJ failed to determine the severity of the mental impairment pursuant to § 414.1520a. The ALJ made no reference to § 404.1520a and the opinion does not show that the ALJ applied the "special technique" required by that regulation. At step 4 of the analysis, the ALJ cited evidence pertaining to plaintiff's mental impairment, including her diagnosed adjustment disorder with anxiety and depressed mood, and the findings of a state agency reviewing psychologist that plaintiff has a severe affective disorder with mild limitations in activities of daily living and social function, and moderate limitations in concentration, persistence, and pace. The ALJ then gave little weight to these opinions because they "reflect only a one-time snapshot of the claimant's functioning," and concluded that "claimant's depression is non-severe posing no more than mild

limitations in functioning for 12 consecutive months." Dkt. 9-1 at 63.[3] The ALJ did not include any limitations relating to the mental impairment in plaintiff's RFC.

This analysis did not comply with § 414.1520a, which among other things requires the ALJ to "include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c)" of the regulation. § 404.1520a(e)(4). The ALJ found plaintiff had "mild limitations" but did not explain what those limitations were, did not tie them to the functional areas listed in the regulations, and did not explain the effect of the determination. *See Rose v. Colvin*, 634 F.App'x 632, 636 (10th Cir. 2015) (§ 404.1520a requires the ALJ to evaluate the claimant's symptoms, signs, and laboratory findings, and rate the degree of functional limitation, to determine the severity of the mental impairment, and to document application of the technique in the decision). Moreover, the opinion does not show whether the ALJ considered and took these limitations into account in formulating the RFC or the hypotheticals posed to the vocational expert. *See Grotendorst v. Astrue*, 370 F.App'x 879, 884, 2010 WL 1049791 (10th Cir. 2010) ("despite record evidence of limitations due to mental impairments, the ALJ failed to either include those limitations in her RFC determination and her hypothetical questions, or explain that failure…. [o]nce the ALJ decided, without properly applying the special technique, that [claimaint's] mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."); *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) ("even if the ALJ determines that a claimant's

---

[3] This conclusion was made at the end of a paragraph where the ALJ also stated that the "totality of the evidence does not support limitations in occupational functioning for a period of 12 continuous months." Dkt. 9-1 at 63. The apparent discrepancy between these two findings is not explained.

medically determinable mental impairments are 'not severe,' he must further consider and discuss them as part of his residual functional capacity (RFC) analysis at step four"). It is impossible to say, given the absence of findings, what these limitations were and whether they were properly considered in formulating the RFC. This was procedural error, and under the circumstances the court cannot say it was harmless. *Grotendorst, supra. Cf. Suttles v. Colvin*, 543 F.App'x 824, 826 (10th Cir. 2013) (omission of mental impairment was "a proper consequence of the ALJ's determination that it did not have an effect on RFC"). Upon remand the ALJ must apply the technique required by § 414.1520a, and clarify whether plaintiff has any mental limitations that affect what she can do in a work setting.

2. *Whether the ALJ erred by failing to assess plaintiff's RFC on a function-by-function basis*. Plaintiff also contends the ALJ erred by failing to determine plaintiff's RFC on a function-by-function basis. She points out that the ALJ found she "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)," without making any individual findings concerning plaintiff's ability to lift, walk, sit, pull, or engage in other specific activities. Plaintiff argues it was error to express the RFC in this manner because SSR 96-8p requires an examination of the specific functions a claimant can perform. Dkt. 10 at 13 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)). In response, the Commissioner argues the ALJ's method was consistent with the one approved in *Hendron v. Calvin*, 767 F.3d 951 (10th Cir. 2014). Dkt. 13 at 4.

SSR 96-8p provides in part that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related

activities on a function-by-function basis," and "[o]nly after that may RFC be expressed in terms of the exertional levels of work…." SSR 96-8p, 1996 WL 374184, *1. The ruling explains that at step 4 of the evaluation process, the RFC must be expressed initially in a function-by-function assessment "because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." SSR 96-8p, 1996 WL 374184, *3. But the RFC "may be expressed in terms of an exertional category … if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy." *Id*. The ruling cautions, however, that failure to consider an individual's ability to perform specific work-related functions could be critical to the outcome of a case at step 4, in part because it "could result in the adjudicator overlooking some of the individual's limitations or restrictions." SSR 96-8p, 1996 WL 374184, *4.

The ALJ did not engage in a function-by-function analysis, nor did he analyze whether plaintiff could perform her past relevant work as it was actually performed. At one point, in discussing a questionnaire from one of plaintiff's employers, the ALJ said the questionnaire "was consistent with the findings … herein that the claimant cannot do her past relevant work as a parateacher." Dkt. 9-1 at 62. But the opinion contained no other findings that plaintiff could not perform that job. Rather, the ALJ found plaintiff could perform her past work as an office manager as that position is typically performed. This finding is problematic for three reasons. First, as SSR 96-8p cautions, relying on an exertional category instead of setting forth specific limitations may cause an ALJ to overlook one or more of the claimant's limitations. As noted above, the ALJ

did not account for or explain the effect of his finding that plaintiff had at least some limitations resulting from a mental impairment. Second, as plaintiff points out, the evidence does not show that the office manager position qualified as past relevant work. Under the regulations, past relevant work is "work that you have done within the past 15 years, that was substantial gainful activity, *and that lasted long enough for you to learn to do it*." 20 CFR § 416.960(b)(1) (emphasis added). The vocational expert testified that plaintiff's office manager position held an SVP (Specific Vocational Preparation) of 7, meaning it requires an average worker *more than* two years and up to four years to learn the job. *Dictionary of Occupational Titles*, Components of the Definition Trainer, App. C, § II. Plaintiff presented evidence that she held the position from February of 2005 to February of 2007, a period of only two years. The Commissioner notes that plaintiff had the burden at step 4, and argues she failed to prove she could not learn the job in the two years she held the position. Dkt. 13 at 8-9. But the DOT itself provides evidence that the minimum period was more than two years. Plaintiff is entitled to rely on the DOT to meet her burden. *See e.g., Adkisson v. Berryhill*, 2017 WL 2198337, *5 (C.D. Cal. May 17, 2017) ("The DOT is the Commissioner's primary source of reliable vocational information, and is usually the best source for how a job is 'generally performed' in the national economy"). The ALJ made no findings concerning whether the position lasted long enough for plaintiff to learn it, and nothing in the record, including the testimony of the vocational expert, contradicts the DOT's assertion that more than two years is typically required to learn it. The uncontroverted record thus shows that the office manager position did not qualily as past relevant work. Beyond

9

these two shortcomings, the record also fails to support the Commissioner's assertion that the vocational expert testified plaintiff could perform her past work as an office manager as that position is generally performed in the national economy. The portion of the hearing transcript at which the ALJ asked the vocational expert about the ability of a person with plaintiff's characteristics to perform sedentary work reads as follows:

> Q. Okay. Okay, thank you. Okay now if the same individual was limited to work at the sedentary level with all of the non-exertional limitations that I gave you, can – first of all [INAUDIBLE]?
>
> A. Yes sir as typically performed.

Dkt. 9-1 at 102.

For all of the foregoing reasons, the case must be remanded for further consideration by the ALJ. In view of this finding, the court does not address the other arguments raised by plaintiff, as those issues may be rendered moot by further proceedings. Additionally, the court rejects plaintiff's argument that the ALJ should be directed to award benefits. The court is remanding based on procedural errors, and nothing in this opinion is intended to suggest any particular outcome with respect to plaintiff's application. The matter is remanded only to assure that the correct legal standards are applied in reaching a decision on the claim.

**IT IS THEREFORE ORDERED** this 26th day of May, 2017, that the Commissioner's decision is REVERSED and the matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

___s/ J. Thomas Marten_____<br>
J. THOMAS MARTEN, JUDGE